UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JOHN LEWIS DAVIS,

       Plaintiff,

v.                     Case No. 2:08-cv-01143

MS. VICKI GREENE,
DR. ANTOINE KATINY, and
VICKI SMITH,

       Defendants.

PROPOSED FINDINGS AND RECOMMENDATION

On October 3, 2008, Plaintiff filed a Complaint under 42 U.S.C. § 1983 against Vicki Greene, the Administrator of the Southwestern Regional Jail (the "SWRJ"), in Holden, West Virginia, and Dr. Antoine Katiny and Vicki Smith, a Physician's Assistant, both of whom are contract health care providers at the SWRJ. (Docket sheet document # 2). Pending before the court are the following motions: Defendant Antoine Katiny's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (docket sheet document # 13), Defendant Vicki Greene's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (# 15), and Defendant Vicki Smith's Motion to Dismiss (# 17), each of which are accompanied by exhibits and Memoranda of Law.

This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the

undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## **PLAINTIFF'S ALLEGATIONS AND REQUESTS FOR RELIEF**

At the time of the allegations in the Amended Complaint, and at the time the Complaint was filed, Plaintiff was incarcerated at the SWRJ, which is operated by the West Virginia Regional Jail and Correctional Facility Authority. Plaintiff was subsequently transferred to a West Virginia Division of Corrections facility, and he has since been released on parole. He is not presently incarcerated.

Plaintiff's Complaint alleges as follows:

> I want to see a medical doctor that will take care of my leg because it's swollen, it has an open sore that drains puss. I've been to medical 30 days straight, my right leg and foot is twice it's size and the pain is unbearable. I also have a big knot on my stomach with a bruise and Vicki Smith said there is nothing they can do for me here. I believe I should be put in a hospital for treatment. I want the court to make the S.W.R.J. never deny any other inmate medical service. I also would like to get paid for my pain and suffering in the amount of Three Hundred Thousand Dollars.

(# 2 at 5-6).

## **THE DEFENDANTS' MOTIONS**

On December 16, 2008, each of the defendants, by counsel, filed a separate dispositive motion. Dr. Antoine Katiny filed a Motion to Dismiss Complaint, and alternative Motion for Summary Judgment (# 13) and Memorandum in Support (# 14), Vicki Greene filed a Motion to Dismiss or in the alternative for Summary

2

Judgment (# 15) and Memorandum in Support (# 15), and Vicki Smith filed a Motion to Dismiss Complaint (# 17) and Memorandum in Support (# 18).

Pursuant to the holding of <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), on December 30, 2008, Plaintiff was notified that he had the right and an obligation to file a response to each of the Defendants' motions, submitting affidavits or statements subject to the penalties of perjury, exhibits, or other legal or factual material supporting his position in the case. Plaintiff was ordered to file his responses by January 30, 2009. Plaintiff failed to file any responses to the pending motions. There is nothing on the docket sheet that would indicate that Plaintiff did not receive the undersigned's December 30, 2008 Order (no mail was returned as undeliverable) and, following the entry of that Order, the Clerk's Office received filing fee payments on Plaintiff's behalf from the Huttonsville Correctional Center, which would indicate that Plaintiff was incarcerated there throughout that time period.

**STANDARDS OF REVIEW**

Motion to Dismiss standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can

be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), <u>overruled on other grounds</u>, <u>Twombly</u>, 550 U.S. at 562-563)); <u>see also</u> <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ."  <u>Twombly</u>, 550 U.S. at 555.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do."  <u>Id.</u>  The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim.  <u>Chao v. Rivendell Woods, Inc.</u>, 415 F.3d 342, 349 (4th Cir. 2005) (quoting <u>Iodice v. United States</u>, 289 F.3d 270, 281 (4th Cir. 2002)).  Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level."  <u>Twombly</u>, 550 U.S. at 555.  Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u> at 570.

Application of the Rule 12(b)(6) standard also requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'"  <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) (quoting <u>Twombly</u>, 550 U.S. at 555; <u>see also</u> <u>South Carolina Dept. Of Health And Environmental Control v. Commerce and</u>

<u>Industry Ins. Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

<u>Summary Judgment standard</u>

Two of the defendants have moved in the alternative for summary judgment on Plaintiff's claims.  Where a court relies on matters outside the pleadings, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and, if granted, the complaint is dismissed with prejudice.  <u>Jeffers v. Wal-Mart Stores, Inc.</u>, 84 F. Supp.2d 775 (S.D. W. Va. 2000).  Because the court will rely upon the Affidavits of Henry R. Robinson, Jr. and Dr. Katiny which are offered in support of each of the defendants' motions, the court will address all of the motions under Rule 56.

In evaluating summary judgment motions, Rule 56 provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c) (2007).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light

5

most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  <u>Id.</u>  The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  <u>Overstreet v. Kentucky Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

If the moving party meets this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); <u>Id.</u> at 322-23.

> [A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406,

414 (4th Cir. 1979).   Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

## ANALYSIS

### A.   Failure to Exhaust Administrative Remedies.

All of the defendants have asserted that Plaintiff's Complaint must be dismissed because Plaintiff failed to exhaust the available administrative remedies before filing his Complaint.   Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("the PLRA") states that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   "Prison conditions" means " . . . conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings."   18 U.S.C. § 3626(g)(2).   A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."   28 U.S.C. § 1915A(c).

In Booth v. Churner, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. Id. at 741.  In Booth, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action.  Id.

In Porter v. Nussle, 534 U.S. 516, 531 (2002), the Court held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or other some wrong."  Not only must a prisoner exhaust his administrative remedies, but he must also do so properly.  Proper exhaustion "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.'"  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2385 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002).  [Emphasis in the original.])  That is, a prisoner must complete the administrative process in accordance with the applicable procedural rules of the process, including the deadlines.

The Court ruled in Jones v. Bock, 127 S. Ct. 910, 921 (2007), that an inmate's failure to exhaust remedies under the PLRA is an affirmative defense; the inmate need not demonstrate in his

complaint that he has exhausted applicable remedies.  <u>Jones</u> also held that an inmate does not automatically fail to exhaust when the inmate sues one or more defendants not named in the pertinent grievances.  <u>Id.</u>, at 923.  If a complaint contains claims, some of which have been exhausted, and some of which have not been exhausted, the entire complaint is not dismissed; the court proceeds only on the exhausted claims.  <u>Id.</u>, at 924-26.

The West Virginia statute pertaining to the requirement that prisoners exhaust remedies is found at West Virginia Code § 25-1A-2(a), which provides as follows:

> (a) An inmate may not bring a civil action until the administrative remedies promulgated by the facility have been exhausted; *Provided*, That the remedies promulgated by the facility will be deemed completed within sixty days from the date the inmate filed his or her initial complaint if the inmate fully complied with the requirements for filing and appealing the administrative complaint.

The Code also requires the Commissioner of the Division of Corrections and the Executive Direction of the Regional Jail Authority to establish administrative procedures for processing prisoners' complaints about the conditions of their confinement.  W. Va. Code § 25-1A-2(b).

The West Virginia Regional Jail and Correctional Facility Authority ("the Authority") has promulgated its procedures through the publication of its "Handbook of Inmate Rules and Procedures," which contains an "Inmate Request and Grievance Procedure."  W. Va. C.S.R. § 94-5-2 (The Handbook is adopted by reference).  The procedure calls for a grievance to be addressed in writing to the

Administrator, with the availability of an appeal to the Chief of
Operations of the Authority and, ultimately, to the Office of the
Executive Director. (Handbook, at 11-12.)  The Authority has also
published Policy & Procedure Statement Number 14003 to the same
effect.

Defendant Greene's Memorandum of Law indicates that Plaintiff
did not exhaust these procedures. (# 16 at 2-4).  Attached to
Defendant Greene's Motion to Dismiss or in the alternative for
Summary Judgment is an Affidavit of Henry R. Robinson, Jr., the
Deputy Chief of Operations for the West Virginia Regional Jail and
Correctional Facility Authority. (# 15-2, Affidavit).  Mr.
Robinson's Affidavit states that he has reviewed the Inmate
Correspondence and Grievance Appeal files and that, as of December
11, 2008, Plaintiff had not filed a grievance appeal to the
Executive Director concerning the subject matter of this case.
(Id., ¶ 4).  Accordingly, Defendant Greene argues that Plaintiff's
failure to fully exhaust the administrative process requires that
Plaintiff's Complaint be dismissed under 42 U.S.C. § 1997e(a). (#
16 at 4).  Defendants Katiny and Smith assert the same argument,
relying upon and incorporating by reference the Robinson Affidavit
and the authority cited by Defendant Greene. (# 14 at 22; # 18 at
6-7).  Defendant Smith notes in a footnote that, while Plaintiff
had attached a grievance, dated September 1, 2008, to his
Complaint, concerning the condition and medical treatment for his
leg, it appears that Plaintiff did not appeal the disposition of

that grievance and, therefore the grievance process was unexhausted. (# 18 at 7 n.1).

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff failed to fully exhaust the available administrative remedies before filing his Complaint and, therefore, his Complaint must be dismissed under 42 U.S.C. § 1997e(a).

**B.   Failure to state a claim.**

All three defendants have also asserted that Plaintiff's Complaint fails to state a claim upon which relief may be granted against them.   The undersigned will address each defendant's argument in turn.

As noted in his Memorandum of Law, Dr. Antoine Katiny is a medical doctor who is employed by PrimeCare of West Virginia, Inc. (hereinafter "PrimeCare").   (# 14 at 1).   Pursuant to his employment, Dr. Katiny provides health care to inmates at certain regional jails in West Virginia, including the SWRJ. (Id. at 1-2). Dr. Katiny's Memorandum of Law further states that Plaintiff was a patient of Dr. Katiny and Nurse Practitioner Vicki Smith. (Id. at 2).

The following summary of Plaintiff's medical history and treatment while at the SWRJ is taken from Dr. Katiny's Memorandum of Law, and supported by an Affidavit of Dr. Katiny:

Plaintiff has been an inmate at the SWRJ on several different occasions.  Plaintiff's most recent incarceration at the SWRJ began on April 22, 2008.  (Id. at 2).  Plaintiff weighs at least 350

pounds, but the scales at the jail do not register higher weights. Plaintiff has been diagnosed with congestive heart failure, hypertension, and asthma. His congestive heart failure and morbid obesity cause edema (swelling) in his legs. (Id.)

Both Dr. Katiny and Nurse Practioner Smith have ordered that the plaintiff be given doses of Lasix, which is a diuretic, for his congestive heart failure. The plaintiff takes Lasix twice a day. His doses have varied, between 60 and 80 mg., both of which are rather large doses. Lasix is given to the plaintiff to reduce edema in his legs and to help control his congestive heart failure. (Id.)

On July 30, 2008, the plaintiff was seen by Nurse Practitioner Smith (hereinafter "Smith") for complaints of a "knot" on his belly and for waking up spitting up blood in the mornings. Smith was unable to palpate a knot in the plaintiff's abdomen, meaning she could not feel the knot complained of on physical examination. Smith ordered Chlortrimatron for a possible sinus irritation and drainage, which could have explained the plaintiff's morning production of blood. (Id. at 3).

Dr. Katiny saw the plaintiff on August 6, 2008 for complaints of a left ear ache. At that time, the plaintiff made no complaints of a "knot" in his abdomen, or any similar complaint. (Id.)

On August 29, 2008, a nurse at the SWRJ saw the plaintiff for his complaint of increased swelling, redness, warmth and tenderness of his right lower extremity. Based on those findings, the nurse

12

obtained a telephone order from Smith that the plaintiff be started on 1 gm. of Keflex, to be given orally twice a day for ten days. The nurse assessed the plaintiff and found that he had a negative Homan's sign, which indicated that he did not likely have a blood clot in his leg.  (Id.)

On September 2, 2008, Smith saw the plaintiff for his complaints of right leg swelling.  The plaintiff told Smith that he thought he had cellulitis and indicated that he needed to either go to a hospital or a prison.  The plaintiff was again assessed as having a negative Homan's sign.  Smith renewed the previous order for 1 gm. of Keflex twice a day.  According to Dr. Katiny's brief, the plaintiff required an extra course of antibiotics because of his obesity, noting that obesity causes impaired circulation in the lower extremities.  (Id.)

The plaintiff's pain medication, Ultram, was increased from 50 mg. twice a day to 100 mg. twice a day, because of the plaintiff's complaints of pain in his leg.  The brief further notes that such pain is common in a morbidly obese patient with edema caused by congestive heart failure.  (Id. at 3-4).

The plaintiff was put on a list to be seen by Dr. Katiny the next time he was at the SWRJ.  (Id. at 4).

on September 9, 2008, Nurse Practitioner Sandra Harlow, another PrimeCare employee, was on call at the SWRJ.  Harlow ordered that the plaintiff be given 200 mg. of Spironolactone, a potassium sparing diuretic, and 40 mg. of potassium chloride.  The

13

Spironolactone was given to further address the plaintiff's congestive heart failure, and the potassium chloride was given because the diuretic can deplete the body's potassium levels. Dr. Katiny agreed with this order. (Id.)

On September 11, 2008, Harlow renewed the plaintiff's order for 1 gm. of Keflex twice a day for seven days. Dr. Katiny approved that order as well. (Id.)

On September 13, 2008, a nurse was called from the medical unit to the A-pod, where the plaintiff was housed, due to a complaint that the plaintiff's leg was bleeding. The nurse noted minimal bleeding from an area on the upper inner part of the plaintiff's leg, although there was a large amount of blood on a towel that the plaintiff had reportedly been holding against his leg. The nurse noted that the area from which the plaintiff was bleeding was "pinpoint in size." The plaintiff was taken to the medical unit. When he arrived, he was no longer bleeding. However, the nurse noted another area to the right lower part of the leg that was raised but was not bleeding and did not have drainage. The area was approximately 7 mm. in diameter. The plaintiff was put on the list to be seen by a nurse practitioner or Dr. Katiny, and taken back to his pod. (Id.)

On September 14, 2008, the plaintiff was brought back to the medical unit because he was draining a clear fluid from the lesion on his right leg. A culture was obtained by the nurse, and the plaintiff was put on the list to be seen by Smith or Dr. Katiny.

14

(<u>Id.</u> at 4-5).

On September 16, 2008, Smith ordered that the dressing on the plaintiff's right leg be changed twice a day to protect the wound from infection or further infection.  She also ordered a 2,200 diabetic calorie controlled per day diet to help him lose weight. (<u>Id.</u> at 5).

On September 17, 2008, the plaintiff was seen by Smith for the complaints of a dime sized area in the right leg that was draining. Smith ordered that the plaintiff be started on the antibiotic Bactrim DS to be given twice a day for seven days, and the antibiotic Clindamycin 150 mg. to be given twice a day for seven days.  Two different antibiotics were ordered in anticipation of the culture showing different infectious organisms.  The results of the culture that was collected from the open area on the plaintiff's right lower leg were returned from the BioReference Laboratories on September 22, 2008, indicating an infection of a heavy growth of *Serratia marcescens*, which is a gram negative bacteria.  Dr. Katiny saw the plaintiff that day and ordered that he be continued on Bactrim DS to be given twice a day for two weeks because that was an antibiotic to which the bacteria was sensitive. Dr. Katiny also ordered that the plaintiff be re-evaluated by Smith.  (<u>Id.</u>)

On October 13, 2008, Dr. Katiny saw the plaintiff at the SWRJ for the plaintiff's request that he be checked for five old pellets that were lodged in his chest.  Dr. Katiny assessed the plaintiff

15

as having 3+ edema of the lower extremities; being morbidly obese; having chronic obstructive pulmonary disease; having congestive heart failure; and Pickwickian syndrome. Dr. Katiny's plan was to check the plaintiff's chest x-ray and continue the plaintiff's current medical treatment. He also assessed the plaintiff as having a better respiratory status that previously. (Id. at 5-6).

On October 13, 2008, a chest x-ray was obtained. It was interpreted as being without pulmonary infiltrates. There was x-ray evidence of an old gun shot wound to the left side. The heart size was interpreted as being normal. An x-ray of the plaintiff's right shoulder was also obtained. It was interpreted as demonstrating calcific tendonitis. On October 24, 2008, Dr. Katiny ordered that the plaintiff be started on Darvocet N100, a weak narcotic analgesic, to be given twice a day for ten days because of his shoulder pain complaints. (Id. at 6).

On October 31, 2008, Smith saw the plaintiff, who complained of retaining fluid and wanting to see a dentist for a concern about his gums. Smith assessed the plaintiff as being morbidly obese and having an impacted back molar. She ordered 1gm. of Keflex to be given twice a day for ten days because of the impacted tooth, and referred the plaintiff to a dentist. She also directed the nursing staff to obtain the results of the last chest x-ray. She ordered that the plaintiff decrease his sodium intake so as not to retain fluid and continued his current medications. (Id.)

The antibiotics that were given to the plaintiff resolved the open and draining lesion on his right lower extremity. The plaintiff continued to experience edema of his lower extremities which is secondary to his congestive heart failure and morbid obesity. (Id.)

The plaintiff was transferred from the SWRJ to the Huttonsville Correctional Center on November 3, 2008. However, he was transferred back to the SWRJ on November 17, 2008, and was medically screened upon his return. The plaintiff did not make any complaints at that time concerning an open or draining lesion on his right lower extremity. (Id.)

Dr. Katiny's Memorandum also discusses PrimeCare's role in inmate health care, stating:

> PrimeCare contracts with the Regional Jail and Correctional Facility Authority to staff the medical department of the regional jails in West Virginia and to provide medical services to inmates. This is a managed-care health delivery system. As a result of PrimeCare's professional expertise, all of the regional jails' medical departments, including the medical department of Southwestern Regional Jail (hereinafter "SWRJ") are fully accredited by the NCCHC [Footnote 2]. As a practical matter, the requirements for accreditation comport with or exceed the requirements for inmate health care set forth in the West Virginia Regulations for Regional Jails.
>
> [Footnote 2 - National Commission on Correctional Health Care. In Nobles v. Duncil, 202 W. Va. 523, 505 S.E.2d 442 (1998), the West Virginia Supreme Court of Appeals noted with approval that Huttonsville Correctional Center's medical program was the only prison's medical program (at that time) to have NCCHC certification. The medical departments of all of the regional jails are overseen by PrimeCare, and all the regional jails' medical programs have either received NCCHC certification or are in the process of doing so if they have been open

17

for less than two years.]

PrimeCare provides health care related services to inmates at the SWRJ. Those medical and nursing services are provided pursuant to PrimeCare's contract with the West Virginia Regional Jail and Correctional Facility Authority. PrimeCare staffs the medical unit at the SWRJ. PrimeCare provides nurses, contract physicians and physician assistants, and other providers including dentists, as may be needed. Additionally, PrimeCare contracts with other providers such as radiology and laboratory service providers, to provide imaging and other testing for inmates of the jail.

PrimeCare provides nurses who are available in the jail twenty-four hours per day to respond to inmate's health care needs. Doctors, including psychiatrist, physician's assistants, and dentists provide scheduled care in the jail as needed on a scheduled basis. Inmates whose injuries or medical needs require examination, are seen by the appropriate physicians and physician's assistants. If it is determined an inmate needs a referral outside the jail, a process is in place to secure referrals for the inmates. In those cases, arrangements are made for inmates to be taken by correctional personnel to be seen by outside health care providers. Prescriptions ordered by physicians are provided to the inmates. There is an agreed-upon formulary from which medications are prescribed. Inmates can be prescribed medication from off of the formulary following a trial period on-formulary, when it is determined by the physician and medical director that it is medically necessary. Medical charting is maintained on inmates seen and treated in the medical department and elsewhere in the jail.

(# 14 at 7-8).

Dr. Katiny's Motion and Memorandum assert that Plaintiff has failed to state a viable claim for relief under the Eighth or Fourteenth Amendments to the United States Constitution, and that Dr. Katiny is entitled to qualified immunity on Plaintiff's claims against him. (# 14 at 9-15). Nurse Practitioner Smith asserts similar arguments. (# 18 at 4-7).

As noted by Dr. Katiny (# 14 at 9), Plaintiff did not specify in his Complaint whether he was a pre-trial detainee or a convicted felon at the time of the incidents forming the basis of the Complaint; however, it is believed that Plaintiff was a pre-trial detainee.[1]  Conditions of confinement of state pre-trial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Hill v. Nicodemus, 979 F.2d 987, 990 (4th Cir. 1992).  However, the analysis of such claims under the Fourteenth Amendment shares much in common with the Eighth Amendment approach.  As noted by the United States Court of Appeals for the Fourth Circuit in Riley v. Dorton, 115 F.3d 1159, 1166 (4th Cir. 1997), "we need not resolve whether [the plaintiff] was a pretrial detainee or a convicted prisoner because the standard in either case is the same, that it, whether a government official has been 'deliberately indifferent to any [of his] serious medical needs.'" Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001).  (# 14 at 9).

---

[1]    According to the Division of Corrections' Records Department, Petitioner was released on parole on a 2006 controlled substance conviction on November 7, 2007.  It appears that Plaintiff was re-arrested and booked at the SWRJ on or about April 22, 2008, and was convicted of his second controlled substance offense on or about November 19, 2008.  Thus, Plaintiff was a pre-trial detainee on his second offense at the time the Complaint was filed.  The court is uncertain of whether Plaintiff's parole status was revoked.  The undersigned notes, however, that, as of October 20, 2008, the Regional Jail website had Plaintiff listed as a Division of Corrections offender.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see also Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Munic. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). For purposes of the pending motions, the undersigned will assume that Plaintiff's infected lesion on his leg constitutes a "serious medical need."

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. See Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. See id. Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. See Estelle, 429 U.S. at 106.

Miltier, 896 F.2d at 851-852.

Dr. Katiny's Memorandum argues as follows:

> Before a health care provider may be held liable for deliberate indifference, a plaintiff must show that his medical needs were serious and that the defendants were deliberately indifferent to those serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). An inmate must prove (1) that objectively the deprivation of a basic human need was "sufficiently serious" and (2) that subjectively, the officials and medical personnel knew that the inmate faced a substantial risk of serious harm, and then disregarded that risk by failing to take

20

reasonable measures.  Farmer v. Brennan, 511 U.S. 825 (1994); Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The deliberate indifference standard requires plaintiff to plead that the providers had a "culpable state of mind."  Wilson v. Seiter, 501 U.S. at 297.  "[O]nly the 'unnecessary and wanton infliction of pain' implicates the Eighth Amendment." Id. at 297 (citations omitted). "[A]llegations of 'inadvertent failure to provide adequate medical care' or of a 'negligent' . . . diagnos[is], simply fail to establish the requisite culpable state of mind." Id. See also, Rich v. Bruce, 129 F.3d 336 (4th Cir. 1997).  In Rich, the Court rejected an objective standard for "deliberate indifference," holding that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id., 129 F.3d at 338.  A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844, see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997).

The plaintiff makes no allegations in his complaint that this defendant was subjectively indifferent to his medical needs.  To the contrary, the plaintiff alleges that he has "been to medical 30 days straight."  He alleges that a nurse practitioner has told him there is nothing that can be done for the "knot" on his stomach. Additionally, the plaintiff seeks to be put in a hospital for treatment.  Such allegations do not assert a claim of deliberate indifference to serious medical needs.  At best, the plaintiff's complaint alleges that he is not satisfied with the medical care that has been provided to him.

* * *

The plaintiff has failed to plead facts which implicate this defendant as being deliberately indifferent to the plaintiff's serious medical needs.  Mere negligence is not enough to meet the "deliberate indifference" standard. [Citation omitted].  Plaintiff does not and cannot allege that this defendant had a culpable state of mind and failed to provide the plaintiff with treatment for his complaints.

On the other hand, the undisputed facts, as demonstrated by the Affidavit of Antoine Katiny, M.D., demonstrate

21

that Dr. Katiny and the other medical personnel in the Southwestern Regional Jail were attentive to the medical needs of the plaintiff. The plaintiff's swollen leg has been treated with different diuretic medications, pain medications, and antibiotics. His stomach has been assessed for the plaintiff's complaint of a "knot" but no findings were made substantiating that complaint. Neither has the plaintiff made further complaints of the "knot" to this defendant or other members of the medical staff. The actions of this defendant and the medical staff at the SWRJ are hardly consistent with someone who is deliberately indifferent to or recklessly disregarding a serious medical condition. See Johnson v. Quinones, 145 F.3d 164 (4th Cir, 1998).

(# 14 at 10-12).

Nurse Practitioner Smith's Memorandum of Law adds:

Dr. Katiny's Affidavit clearly illustrates that there has been no deliberate indifference to the serious medical needs of Inmate Davis. To the contrary, Dr. Katiny's Affidavit shows that day in and day out the various and sundry medical needs of Inmate Davis have been addressed with a number of different medications prescribed to him for his congestive heart failure, hypertension, and asthma. Moreover, Dr. Katiny has explained that Inmate Davis' congestive heart failure and his morbid obesity (more than 350 lbs.) causes edema in his legs. Dr. Katiny's Affidavit reveals that throughout September and October of 2008, medical professionals at the Southwestern Regional Jail were addressing Inmate Davis' medical concerns through multiple physical examinations and lab work. Even a chest x-ray was obtained to analyze an old gun shot wound to Inmate Davis' left side at the request of Nurse Vicki Smith. Any reasonable observer of the course of medical care provided to Inmate Davis would find it difficult to disagree with the premise that Inmate Davis is indeed receiving almost daily medical care and observation regarding the complaints he has made, and in truth is probably receiving more consistent and thorough medical treatment than if he were not incarcerated at the Southwestern Regional Jail. Thus, Inmate Davis' complaint cannot withstand the scrutiny required by federal court decisions which set the standard that an inmate must prove, i.e., that his/her medical needs were serious and that healthcare providers were deliberately indifferent to those serious medical needs.

* * *

> In the subject case, Inmate Davis has made no allegations that any of the medical defendants were subjectively indifferent to his medical needs. In addition, Inmate Davis has failed to provide crucial information that will permit this Court to test the sufficiency and veracity of Inmate Davis' allegations.

(# 18 at 4-5).

The evidence of record does not support a finding that Dr. Katiny or Nurse Practitioner Smith were deliberately indifferent to Plaintiff's serious medical needs. The medical records indicate that Plaintiff received regular, sometimes almost daily treatment for each of his problems, in accordance with the judgment of the medical professionals.

Defendant Vicki Greene, the Administrator at the SWRJ, has also asserted that Plaintiff's Complaint fails to state a constitutional claim against her. Defendant Greene asserts that Plaintiff has merely alleged a dissatisfaction with his medical treatment and, moreover, that jail officials are entitled to rely upon the expertise of medical professionals. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975). (# 16 at 5). Defendant Greene further asserts:

> Plaintiff makes no allegation Defendant Greene attempted to influence medical staff concerning the course of the treatment received. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). A denial of medical treatment claim cannot be brought against an administrator of a state jail absent the allegation that the administrator was personally connected with the denial. Vinnedge v. Gibbs, 550 F.2d 962 (4th Cir. 1977). The inmate makes no cognizable claims concerning the Defendant.

(Id. at 6).

All of the defendants are correct in their assertions that disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review.  Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975).  As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977). Furthermore, Defendant Greene in her capacity as Administrator is entitled to rely upon the medical judgment of the health care providers.  Russell, *supra*, 528 F.2d at 319.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to establish that any of the defendants were deliberately indifferent to his serious medical needs and, thus, Plaintiff has failed to demonstrate a violation of his Eighth or Fourteenth Amendment rights.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the defendants are entitled to judgment as a matter of law on Plaintiff's constitutional claims, to the extent that such claims are raised in Plaintiff's Complaint.

C.    **Qualified Immunity.**

All of the defendants also assert that they are entitled to qualified immunity on Plaintiff's claims against them.  Qualified good faith immunity shields a government official from liability if the official's conduct does not violate a clearly-established statutory or constitutional right of which a reasonable person, in the same position, would have known.  See <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982).

Defendant Greene, as Administrator of the SWRJ, is a state government official.  (# 16 at 4).  As noted by both Dr. Katiny and Nurse Practitioner Smith in their Memoranda, by providing health care services to Plaintiff under a contract with the West Virginia Regional Jail and Correctional Facility Authority, Dr. Katiny and Nurse Practitioner Smith were acting under color of state law, and stood in the shoes of a state actor for purposes of section 1983. (# 14 at 13; # 18 at 6).  Thus, they would be entitled to qualified immunity, if warranted.  See <u>West v. Adkins</u>, 487 U.S. 41 (1988). (# 18 at 6).

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  If the allegations do not give rise to a constitutional violation, no further inquiry is necessary.  <u>Id.</u>  If, on the other hand, a violation can be shown,

then the court must determine whether the right was clearly established in the specific context of the case.  Id.

Dr. Katiny's Memorandum addresses his qualified immunity defense as follows:

> Dr. Katiny, who stands in the shoes of a state actor, is not liable for monetary damages because his conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known.  To be clearly established for qualified immunity purposes means the contours of the right must be sufficiently clear that a reasonable state actor (in this case a health care provider in a jail) would understand that what he or she is doing would violate that right. In the light of the pre-existing law, the unlawfulness of the act must be apparent.  Wilson v. Layne, 526 U.S. 603 (1999).  Qualified immunity exists to protect officers (in this case state actor health care providers) in the performance of their duties, unless they are "plainly incompetent" or they "knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986); Doe v. Broderick, 225 F.3d 440, 446 (4th Cir. 2000).

> Although it is well known that prison and jail inmates have a clearly established right to protection of their constitutional rights, an inmate cannot simply strip an official of his or her qualified immunity by making generalized, unsubstantiated statements.  Instead, it is required that a right be clearly established to ensure that an official has ample notice of the legal standard that governs their conduct.  Consistent with the requirement of notice, "the nature of the right allegedly violated must be define 'at a high level of particularity.'"  Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001).

(# 14 at 14-15).  Nurse Practitioner Smith's Memorandum adds:

> It is equally true that Nurse Smith, in providing health care services to Inmate Davis, was acting under color of state law and was therefore entitled to good faith qualified immunity.

(# 18 at 6).

26

Defendant Greene's Memorandum adds:

all actions undertaken concerning Plaintiff were done in
a good faith effort to comply with the law.  Indeed,
given that all officers behaved in a manner consistent
with regional jail policy and training, there can be no
doubt that Defendant [Greene] was acting in a good faith
effort, consistent with policy and well settled law.
Defendant [Greene] is immune.

(# 16 at 4).

As stated above, Plaintiff cannot show that any of the
defendants violated his constitutional rights.  Therefore, the
undersigned proposes that the presiding District Judge **FIND** that
Plaintiff's claims for damages against the defendants are barred by
the doctrine of qualified good faith immunity.  Accordingly, the
undersigned proposes that the presiding District Judge **FIND** that
each of the defendants is entitled to judgment as a matter of law
on Plaintiff's claims.

### D.  **Failure to comply with MPLA requirements.**

Dr. Katiny and Nurse Practitioner Smith also argue that, to
the extent that Plaintiff's Complaint is making a claim of
negligence or medical malpractice against them, such claims must be
dismissed because Plaintiff has failed to comply with the pre-
filing requirements of West Virginia Code § 55-7B-6, which is part
of the West Virginia Medical Professional Liability Act ("MPLA"),
entitled "Prerequisites for filing an action against a health care
provider; procedures; sanctions."  That code section provides:

(a) Notwithstanding any other provision of this code, no
person may file a medical professional liability action
against any health care provider without complying with

27

the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death . . . .

W. Va. Code § 55-7B-6. The MPLA defines "medical professional liability" as "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W. Va. Code § 55-7B-2(i). Under the statute, "health care" means "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to or on behalf of a patient during the patient's medical care, treatment or confinement." Furthermore, a "health care facility" includes a "state-operated institution or clinic providing health care." W. Va. Code § 55-7B-2(f).

Defendants Katiny and Smith assert that these statutory provisions are applicable to Plaintiff's claims and further assert

28

that, because Plaintiff did not comply with the notice of claim and certificate of merit requirements 30 days prior to filing his Complaint, that this court lacks jurisdiction over Plaintiff's medical negligence claims.  Accordingly, Defendants Katiny and Smith contend that Plaintiff's claims against them must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of jurisdiction.

A suit filed pursuant to 42 U.S.C. § 1983 asserting a violation of a plaintiff's Federal constitutional right to be free of cruel and unusual punishment raises issues of federal law which may not be limited by a State statute.  Plaintiff has not asserted a State claim of medical malpractice or negligence which would implicate State law.  Accordingly, the pre-filing requirements of the MPLA have no application to Plaintiff's Eighth Amendment claims.  See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state"); Foreman v. FCI Beckley, Case No. 5:04-cv-01260, 2006 WL 4537211 (S.D. W. Va., Mar. 29, 2006)(Medical negligence claim brought under FTCA was dismissed for failure to comply with MPLA pre-filing requirements, but Bivens claim for deliberate indifference to serious medical need was not dismissed).  The undersigned proposes that the presiding District Judge **FIND** that the West Virginia Medical Professional Liability Act does not apply to Federal suits filed pursuant to 42 U.S.C. § 1983, and alleging

deliberate indifference to a serious medical need.

However, to the extent that Plaintiff's claims in his Complaint could be construed to be alleging negligence by the health care providers, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to comply with the requirements of the MPLA, and thus his negligence claims are barred by the pre-filing requirements of the MPLA.

**E.    Other grounds for dismissal.**

Defendant Greene has also asserted that she is immune from any claim for damages under the Eleventh Amendment to the United States Constitution.  A suit against a state or a state agency, or its officials in their official capacity, for money damages, is barred by the Eleventh Amendment.  A state agency is not a "person" within the meaning of 42 U.S.C. § 1983, and can only be sued for injunctive relief.  Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).  Thus, the undersigned proposes that the presiding District Judge **FIND** that to the extent that Plaintiff has sued Defendant Greene in her official capacity as Administrator of the SWRJ, such a claim is barred by the Eleventh Amendment.

Furthermore, to the extent that Plaintiff was seeking injunctive relief in the form of specific medical treatment, such as being sent to a hospital, his claim is now mooted by his release from custody.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendant Katiny's Motion to Dismiss or in the alternative for Summary Judgment (# 13), **GRANT** Defendant Greene's Motion to Dismiss, or in the alternative Motion for Summary Judgment (# 15), and **GRANT** Defendant Smith's Motion to Dismiss (# 17).   The undersigned further proposes that the presiding District Judge **DENY** Plaintiff's renewed Application to Proceed Without Prepayment of Fees and Costs (# 26).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), the Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.   Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Synder

v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and counsel of record.

August 24, 2009
            Date

Mary E. Stanley
Mary E. Stanley
United States Magistrate Judge